CHRIST MERTENS et al., Appellees, v. HERMAN WELSING et al., Appellants.

Fraudulent Conveyances : SALE TO HINDER AND DELAY CREDITORS: EVIDENCE. Where an insolvent debtor conveyed certain lands to his brother-in-law, and it appeared that the latter had never seen the land but twice, the last time being long prior to the alleged purchase; that he knew of the grantor being in trouble financially, and was doubtful of his right to sell; that the price alleged to have been paid was greatly less than its value, and it did not satisfactorily appear where he procured the money claimed to have been paid; that he stated to others that he did not have much interest in the land, and that he did not care what became of it, so he got his money out of it; that after the conveyance the rents were paid to the grantor, and the latter continued to act in relation to the land in nearly all respects as he had before the alleged sale, held, that conceding a sufficient consideration to have been paid, yet it appearing from the evidence that the purpose of the sale was to hinder and delay creditors, and that such purpose was known to the grantee, the conveyance was invalid as against the creditors of the grantor.

*Appeal from the Lee District Court.*—HON. CHARLES H.
PHELPS, Judge.

MONDAY, MAY 23, 1892.

ACTION in equity to set aside a deed, and to subject
certain lands to the payment of the plaintiff's judg-
ment. There was a judgment and decree in the district
court for the plaintiffs. All of the defendants, except
H. Welsing, appealed.—*Affirmed.*

*Newman & Blake*, for appellants.

*J. D. M. Hamilton* and *S. L. Glasgow*, for appellees.

KINNE, J.—The defendant, H. Welsing, was, dur-
ing the year 1878, and for several years thereafter,
treasurer of Lee county, Iowa. The plaintiffs were
sureties upon his official bond. Said Welsing became a
defaulter to the county, and in 1884 it recovered a judg-
ment on said bond against the plaintiffs and Welsing
for five thousand, eight -hundred and thirty-seven dol-
lars and seventy-seven cents and costs, which judgment
was afterwards affirmed by this court. The plaintiffs
paid said judgment and costs, and the same was
assigned to them. The defendant, Welsing, has never
paid any part of said judgment, and he is alleged to
be insolvent. September 8, 1884, said Welsing and
his wife conveyed certain land, then in his name, to
the defendant, Louis Jacques (his brother-in-law), as
is alleged, without consideration, and for the purpose
of hindering and delaying the plaintiffs and other
creditors of his, and that said Jacques knew of such
purpose. The plaintiffs ask that the conveyance be set
aside, and the land subjected to the payment of their
judgment. The defendants filed a general denial.
Three questions were presented: *First.* Was the con-
veyance made by Welsing to hinder and delay his

creditors? *Second.* Did the grantee, Jacques, have knowledge of such intent on the part of his grantors? *Third.* Was there any consideration for the deed?

I. The defendant H. Welsing does not appeal. It is insisted that the motion to exclude the depositions of witnesses Graus, Warner, Bennett, Holder, and Mertens, filed May 28, 1889, and which was submitted with the case to the district court, should have been sustained. It appears from the record that this motion was not ruled upon by the court. It was based upon the following grounds: *First*, that the evidence therein was not in rebuttal, but in chief; *second*, because the same was not filed on or before May 15, 1889, in accordance with the agreement of the parties. While we think there is some testimony in these depositions which is properly rebutting, yet, in the view we take of the case, we disregard this testimony entirely, and hence need not pass upon the questions presented in the motion.

II. We are fully satisfied that this sale was made by Welsing with the intent and purpose of delaying and defrauding the plaintiffs, and that the grantee, Jacques, had knowledge of such intent. It is always proper to consider the situation and relation of the parties. Welsing and Jacques were brothers-in-law. Welsing and wife often visited Jacques, during 1884. Welsing, in September, 1884, tried to borrow one thousand dollars of Jacques. Failing in this, he sold him the land at about twelve dollars per acre. Jacques had never seen the farm but twice, and that was long prior to its purchase. He thinks he was on it in 1884, before he bought it, but does not seem positive. He knew Welsing had trouble with Lee county. He wanted to see a lawyer to know if Welsing had a right to sell the farm on account of troubles in Lee county, and if he would be safe in buying. He told Root he did not have much interest in the land. This was

after he had owned it for some time. True, he denies the conversation with Root. In 1887 Jacques said, in the presence of two parties, that he paid cash for the farm, but did not care what became of it, so he got his money out of it. While there is a hopeless conflict in the evidence as to the value of the land, yet it appears to us that the price agreed to be paid was greatly less than its value. Jacques does not satisfactorily show where he procured all the money he claims to have paid upon the land. He never occupied the land in person. Most of the rents continued to go to Welsing after the sale as before. Jacques claims he ordered the tenant to pay these rents to Welsing. But there is an appearance from the evidence about the transactions of these parties that forces one to the conclusion that the sale was a nominal change in title merely to help out Welsing. Welsing continued to pay the taxes on the land, with the exception of two years, just as he always had, and it is claimed he paid them for Jacques. In other words, the evidence shows that in nearly all respects Welsing was acting in relation to the land, and its products and care, as he always had prior to the sale. Jacques claims he did not know of his brother-in-law Welsing's financial condition. In the light of all the evidence, and of the relations of these parties, we cannot accept his claim as true. Parties bought crops which were raised upon the farm, and they paid Welsing. We might cite many other facts disclosed by the testimony which warrant the conclusion we have reached. Even if it should be conceded that a sufficient consideration was paid, still, the purpose of the sale being to hinder and delay creditors, which was known to the grantee, it is invalid. *Chapel v. Clapp*, 29 Iowa, 191; *Williamson v. Wachenheim*, 58 Iowa, 277; *Sweet v. Wright*, 57 Iowa, 510. Counsel do not disagree as to the law applicable to this case, nor could they well do so, for it is well settled, and

need not be reviewed. The questions are of fact, and, after a full consideration of all the competent evidence, we think the decree of the court below was right, and it will be AFFIRMED.